IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANTHONY ACOSTA-VIGIL,

      Plaintiff,

      v.                                                    No. 1:09-CV-929 BB/LAM

ANGELA DELORME-GAINES,
in her capacity as a
Tesuque Tribal Court Judge,

      Defendant.


**FINAL MEMORANDUM OPINION AND JUDGMENT**
**DENYING HABEAS CORPUS AND DISMISSING PLAINTIFF'S CLAIMS**

THIS MATTER came before the Court on Plaintiff's Petition for Writ of Habeas Corpus and for Relief from a Conviction and Sentence by a Person in Tribal Custody with Request for Expedited Relief (Doc. 1). After reviewing Defendant's (hereinafter "Respondent") expedited response and holding oral arguments on September 29, 2009, the Court now finds Plaintiff (hereinafter "Petitioner") has failed to exhaust his remedies in tribal court and therefore this Court must refrain from considering the merits of his claims.

Facts Alleged

Petitioner is an enrolled member of the Assiniboine/Sioux of Ft. Belknap, Montana who resides near Chimayo, New Mexico. Tesuque Pueblo law enforcement officer Waylon Brown initiated a traffic stop of a motor vehicle operated by Petitioner within the boundaries of the Tesuque Pueblo on July 8, 2009. Pursuant to the traffic stop and subsequent investigation, Officer Brown placed Petitioner under arrest for allegedly driving while under the influence of an

intoxicant, driving with a revoked or suspended license, and having an open container in a vehicle.  N.M.S.A. 66-8-102, 66-5-39, 66-8-138(A) (1978 Comp.).  Petitioner appeared on August 24, 2009 before Respondent in the Tesuque Tribal Court to be tried for the above-stated misdemeanor offenses.  Officer Brown failed to appear as a witness against Petitioner at trial.  Indeed, no witnesses with personal knowledge of the events leading to the arrest appeared for trial.  Rather, Respondent, Judge Delorme-Gaines, a licensed New Mexico attorney, represented at the oral argument before this Court that Petitioner had admitted he was driving on a suspended license during a trial she had presided over in July.[1]  At that July trial, Respondent gave Petitioner a 90-day jail sentence and suspended 30 days on the condition that Petitioner obtain a valid license and not violate his probation.  In the subsequent trial, Respondent apparently concluded that Officer Brown's citation was sufficient evidence that Petitioner was again driving with a suspended or revoked license.  Respondent dismissed the driving-while-under-the-influence charge and found Petitioner guilty of driving with a suspended or revoked license.

     Petitioner was sentenced to 20 days of incarceration in the Santa Fe County Adult Detention Facility, from September 14, 2009 to October 3, 2009.  Petitioner's counsel filed this Petition on September 24 seeking habeas corpus.  At oral argument on September 29, 2009, the Court informed Petitioner of its misgivings regarding jurisdiction and subsequently entered an

---

[1] Respondent represents that, on July 8, 2009, Petitioner was pulled over for driving with a burned-out taillight.  After pulling Petitioner over, a Pueblo of Tesuque Officer requested Petitioner's driver's license, insurance card, and registration.  In response, Petitioner admitted that his license was revoked due to a past DWI charge and handed the officer an ID Card.  A motor-vehicles check confirmed that Petitioner's license was suspended and that there was an active warrant out for him in another New Mexico county.  After observing several alcoholic-beverage containers in Petitioner's vehicle, the officer administered field sobriety tests, charged Petitioner with a DWI, and transported him to the tribal police for booking and blood analysis.

opinion denying consideration of habeas corpus until Petitioner exhausted tribal remedies. Petitioner never did so and this Court now adopts that opinion herein as its final order.

## Parties

Respondent challenges the Petition on the grounds that she is not the appropriate legal party to respond because she does not have custody of Petitioner. Technically, Respondent may be correct. The proper-party respondent is the person with the ability to produce the prisoner's body. *Galaviz-Medina v. Wooten,* 27 F.3d 487, 494 (10th Cir. 1994). However, a designation of the wrong defendant does not affect the Court's jurisdiction. *Montez v. McKinna*, 208 F.3d 862, 864 fn. 1 (10th Cir. 2000). In the myriad situations contemplated by federal habeas corpus, courts should allow petitioners to join any additional or substituted parties if doing so would serve the ends of justice. 28 U.S.C.§ 2254, Rules Governing § 2254, Rule 2, advisory committee comments. If Petitioner wishes to proceed, the Court will look favorably on a motion to substitute appropriate parties.

Petitioner's higher hurdle arises from the total-exhaustion jurisprudence developing under the Indian Civil Rights Act, 25 U.S.C. § 1301 *et seq.* ("ICRA").

## Failure to Exhaust Tribal Remedies

The provisions of the United States Constitution do not limit the powers of Indian tribes. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49 (1978); *Talton v. Mayes*, 163 U.S. 376 (1896). The ICRA does, however, provide Indians with substantially equivalent statutory rights. It states, *inter alia*:

> No Indian tribe exercising powers of self-government shall–
> \*\*\*
> (4) compel any person in any criminal case to be a witness against himself;

\*\*\*

(6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;
\*\*\*
(8) deny any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;

25 U.S.C. §§ 1303 (4), (6), and (8).

These rights are designed to limit tribal government and it is therefore appropriate that tribal courts interpret their application to tribal proceedings. "Tribal courts play a vital role in tribal self-government, and respect for that role requires, as a matter of comity, that examination of issues of tribal sovereignty and jurisdiction be conducted in the first instance by the tribal court itself." *Azure-Lone Fight v. Cain*, 317 F. Supp. 2d 1148, 1150-51 (D. N.D. 2004) (quoting *Reservation Tel. Co-op. v. Three Affiliated Tribes of Fort Berthold Reservation,* 76 F.3d 181, 184 (8th Cir. 1996)). A "federal court should not entertain a challenge to the jurisdiction of a tribal court until after a petitioner has exhausted the remedies available in tribal court." *Id.* at 1150 (citing *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985)).

Federal courts have therefore generally recognized that a petitioner must fully exhaust tribal-court remedies before a federal court can review challenges to his detention. *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004); *Azure-Lone Fight*, 317 F. Supp.2d at 1150; *Quair v. Sisco*, 359 F. Supp. 2d 948, 971-72 (E.D. Cal. 2004); *Lyda v. Tah-Bone*, 962 F. Supp. 1434, 1436 (D. Utah 1997). At one time this clear legal requirement did not apply to Indians like Petitioner who were not members of the prosecuting tribe as it was believed that tribes lacked inherent sovereignty over such non-member Indian defendants. *See Duro v. Reina*, 495 U.S. 676 (1990). Congress acted

immediately to correct that legal misimpression by amending the ICRA to define the tribal "powers of self-government" to regulate "over all Indians." 25 U.S.C. § 1301(2); *Mousseaux v. United States Comm'r of Indian Affairs*, 806 F. Supp. 1433, 1442-3 (D. S.D. 1992). Consequently, tribes now have the same powers over non-member Indians as they do over tribal members. *United States v. Enas*, 255 F.3d 662, 675 (9th Cir. 2001) (en banc).

The 1990 congressional amendment to the ICRA makes Petitioner's position legally analogous to that of any state prisoner seeking federal habeas relief from a state-court decision. For reasons supported by federalism and comity, such an individual must fully present his claims to the state court and exhaust all state remedies before pursuing federal habeas relief. *See Johnson v. Champion*, 288 F.3d 1215, 1223 (10th Cir. 2002); *Boozer,* 381 F.3d at 936; *Frazer v. Superior Court, Cal., County of Mendocino*, 2001 WL1456793 at *9 (N.D. Cal.) (discussing exhaustion in tribal context).

Petitioner maintains that he should not be required to exhaust tribal remedies that would be futile here. Petitioner's argument is based on the premise that, under Tesuque appellate procedure, he would not be allowed counsel during his appeal. Respondent challenges that conclusion, noting that Petitioner had twice been informed of his right to counsel at trial and had explicitly waived it. Respondent, Judge Delorme-Gaines, also notes that the Tesuque Tribe is considering an appellate procedure that would allow Petitioner appellate counsel and it is not clear that, if he proceeds with his tribal appeal, Petitioner cannot be represented by counsel. In light of this possibility, it certainly cannot, at this stage, be decided that Petitioner's exhaustion of tribal procedures would be futile. *See Miner Elec., Inc v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1012 (10th Cir. 2007); *White v. Pueblo of San Juan*, 728 F.2d 1307, 1313 (10th Cir. 1984).

## Conclusion

The only way that Petitioner's ICRA rights may be asserted[2], require Plaintiff must first exhaust the tribal remedies available to him before pursuing federal habeas relief. Plaintiff has refused to do this and this Court therefore has no jurisdiction.

                                                    _____
                                                    BRUCE D. BLACK
                                                    United States District Judge

---

[2] *See Santa Clara Pueblo,* 436 U.S. at 51-2.